Thank you, Your Honor. Good afternoon. May it please the Court. My name is Matthew Zirzo, and I am counsel to the appellants who include the members of the displaced Board of Directors of Sino Clean Energy, as well as certain shareholders. Counsel, can you answer a procedural question for me? Certainly. As I understand it, the individual displaced board members were not named in the original action in the district court. Is that correct? They were added on appeal, and to invoke the ancient Latin phrase, quo warrento, by what warrant do you do that procedurally without a motion in order of the court? Your Honor, the action brought in the case commenced in September of 2016. The action was brought at the insistence of those members of the Board of Directors. Indeed, the resolutions in the record specifically were signed by them. But the bankrupt estate is the company, is it not? It's not the individuals who served on the board. It is, Your Honor, yes. So I renew my question. What are they doing in this case? Well, Your Honor, I do think that they are interested parties. I do think that they are aggrieved parties. But you can't just add them willy-nilly. That's the concern I have. I don't understand why you did that or how you do it without an order either from the trial court or from the Court of Appeals seeking leave to do that. And I didn't see anything in the record indicating that that was done unless I missed it. Your Honor, there was no specific substitution. What I would argue to you is that a corporation, as an artificial entity, can only act by and through individuals. Those individuals in question included specifically the very displaced Board of Directors. Except it doesn't. I mean, that's the problem because the receiver was lawfully appointed and lawfully replaced your clients with a different set of individuals. And once there has been a replacement board, they're just like people on the street, aren't they? No, Your Honor, I don't think that's a fair characterization. I think that these individuals acting on behalf of the company... But they're not. That's the question. By what authority does a former Board of Directors member act on behalf of anybody but him or herself? Well, Your Honor, as the briefs indicate, we do believe, it's the appellant's position, excuse me, that there is a residual authority that Even if there is a residual authority, as you argue here, to answer Judge Tallman and Judge Graber's questions, your clients did not seek to exercise that authority from the court saying that the appointment of the receiver somehow was improper on behalf of the company and no action was taken except by your clients to file the bankruptcy petition, correct? Your Honor, that is true. And to be clear, my clients did not enter any appearance in the state court receivership action, I think is what you're asking. They didn't participate. Yeah, but that went on and on and on, and it sort of kind of forced a hand, right? And that's why we're here in a way, because in action by your clients, other than the filing of the bankruptcy petition, that's all they did, to exercise whatever residual authority, as you claim, they had. Well, and Your Honor, what I would say to that in response is they didn't need to. And indeed, it's a troubling precedent to require parties to appear in state court when what the real question we're talking about is the authority to file a bankruptcy petition. State courts should have no jurisdiction and no decision-making authority. Ultimately, it's the appellant's position to conclude who has the authority to file a bankruptcy petition. But state law governs the corporation question at issue, which is who is the Board of Directors. That's not a federal question. It's not a bankruptcy question, per se. It's a matter of state law as to who can act on behalf of the corporation. Indeed, Your Honor. So if your clients thought that there was something improper under state law, why wouldn't they have to go to the state court to straighten that out and say, no, no, we're the real Board of Directors? Your Honor, I would agree with you to the extent that that is true, to the extent they sought to attack the receivership order or seek to, I suppose, my clients could have made any number of arguments to the state court appointing the receiver, including, we'd like the authority to file for bankruptcy or have the receiver file for bankruptcy on behalf of the company or disband the receivership. You're absolutely right that they could have made those kind of arguments to the state court. But there is a separate question, is the appellant's argument, as to the authority to file. You're absolutely right that, generally speaking, the authority to file bankruptcy is a matter of state law. Counsel, the problem I'm having with the position that you're taking is that by filing without a state district court or the United States Bankruptcy Court, your clients have effectively insulated themselves from submitting to the jurisdiction of a United States court, and yet you now purport to act on their behalf to seek relief in the United States Court of Appeals, when, so far as I can tell, they are Chinese nationals who have absolutely no contact with the board directors of this company. And I don't understand why the law should countenance that kind of tactical maneuvering by a party seeking relief who refuses to submit to the jurisdiction of a state or federal court. Your Honor, what I would say to you is, the issue being raised is, I understand it's of concern, however, I don't know how else the appearance would be entered. If you're stating, for example, or suggesting, I should say, that the appearance should have been made by them personally in the bankruptcy court and saying, and joining the dismissal order, if I understand. Yeah, I mean, that is the question. In other words, if they want relief, whether it's from a state court, a bankruptcy court, or a U.S. Court of Appeals, they have to be parties to the action. Well, Your Honor, I do think that they would have, they would be aggrieved parties, first of all, that would have standing. But isn't the answer to that question to seek leave of a court to be joined as parties to the proceeding, and then the court can entertain whatever arguments they wish to make, and if the court rules in their favor, issue appropriate orders granting the relief that they seek? Your Honor, what I would argue is that the failure for them to be personally joined at the bankruptcy court level should not foreclose the appeal of this very critical issue. So it's, in a sense, it's circular, because your position is they do act on behalf of the corporation, and the corporation is a party. So if that's, if we bought that argument, it would fold into, I think, Judge Tallman's question. My difficulty is, not having challenged the Well, it's probably the wrong label, but it's presumed to be valid as a matter of State law, the receivership and the replacement of the board. So I don't understand how we can look behind that as a substantive matter. Your Honor, to be fair, I don't think that's what the appellants are asking, for you to attack or look behind the receivership order. I do think the argument, maybe more properly put from the appellant's perspective, would be that we do believe there is a separate question as to the authority to file that is not in any way foreclosed by the State court decision on default. But it seems as if you're asking us to ignore the appointment of a receiver who, in effect, appointed a sole board, member of the board, this fellow Grayson or whatever. It seems as if you are attacking that in a collateral way. I'm not, to be clear, I'm not suggesting a rule for that the displaced board can willy-nilly simply ignore the receivership order. I am arguing for a narrowly tailored, limited exception with respect to solely the issue of authority to file bankruptcy because of the important Federal interest involved. Is there any support in Nevada law for the idea that a former board member has any authority of any kind with respect to the corporation? There is not, Your Honor, and I have looked. And I think in the absence of that, and indeed what I would argue, obviously, from the briefs, is that it is not a matter of State law. With respect to... I thought that's where we started the conversation. I thought acting, whether or not someone is entitled to act on behalf of a corporation, is a matter of State law. As a general matter, it absolutely is, Your Honor. What I'm arguing for is a very limited exception to that undoubtedly general rule that is... But other than wanting it to be so, what is your authority for that? Authority, I'm sorry, Your Honor, authority for... For the proposition that even though your clients are no longer board members in any way, they're former board members. And I guess I don't see any legal authority for saying that in spite of that, they have any opportunity to do anything on behalf of the corporation, whether it's filing for bankruptcy or anything else. I just don't see a source of law that gives them that option. Your Honor, the appellant's position would be that the authority does not derive from State law, that it derives from Federal common law. What? How do you get around the Supreme Court's decision in Price versus Gurney and our decision in Oil and Gas Company versus Dury, which, as I read them, clearly say this is an issue of State law. And it seems to me that your clients are in exactly the same position as the appellants in Dury, where we held that they had no authority to act on behalf of the company, that they were essentially an imposter, whose action is null and void, to quote from the Dury opinion. And, Your Honor, both of those decisions dealt with issues whereby you had a party who clearly didn't have the authority to file. By way of example, in Dury and Dicta, I believe it was a displaced officer. And it was also an insurance company that was legally unable to file. It was an insurance company. But aren't some of these individuals former officers of the company? Well, Your Honor, the authority to, yes, but... So then why wouldn't at least those individuals... Because they're also directors. ...be directly controlled by Dury, a case which I think is directly on point. I apologize, Your Honor, I didn't mean to talk over you. The authority to file on behalf of an entity resides in the Board of Directors, not in an officer. So... No, no, I'm talking about officers. Yes, the actual Board of Directors. That's my problem, I guess, with your position. And what is the source of what you referred to as common law in bankruptcy? Where is, where does that come from? Your Honor, the best discussion of that is obviously in Judge Haynes from the Bankruptcy for the District of Arizona's decision in Corporate and Leisure Services. We cited that case extensively. And it is a, I consider it a Federal override, if you will, of state law given the important Federal interest at issue. And so the, to answer your question directly, it is Federal common law. It is the preemptive effect of the bankruptcy code as it applies to state law. In this specific instance, I'm not arguing for broad-based preemption. I'm arguing for, again, a narrowly tailored limited exception to the general, undoubtedly general rule that state law determines who has the authority to file. And I think it's important to keep that a very narrowly tailored limited exception to be used only in situations like this, Your Honor. Did you want to save a little bit of rebuttal time? Please, thank you. Thank you. Good afternoon, Your Honors. Katherine R. Katniss, fully in Lardner on behalf of Robert W. Seiden, Esquire, the receiver. May it please the Court, Your Honors, the Petitioner here has never challenged the State court orders, and in fact, has actually ignored those State court orders. And as Justice Talmadge pointed out, this is merely a tactical maneuver on behalf of the Petitioners to usurp the receiver's authority. Well, it can be tactical or not, but if it's authorized, it doesn't matter whether it's tactical or not. So what — there is a rather extensive opinion from another bankruptcy judge that — so regardless of our thoughts, someone has been convinced by the appellant's position. So where's the error in the Arizona Bankruptcy Court's leisure event opinion? Sure. Justice Graber, I think the difference is that the — first of all, first and foremost, the facts of that case are exceedingly different from the facts of our case. In that case, you had a set of Petitioners that actively was involved in the underlying litigation. They participated. They were involved. They didn't — we didn't have a situation where we had a Chinese company that withdrew from the U.S. and refused to appear before the State court, and then filed bankruptcy on the eve of a contempt proceeding by the receiver. That's the first difference. The second difference, and this is very important because it goes to Petitioner's preemption argument, and that is in corporate and leisure, the Court focused on the timing of the bankruptcy as it related to the receivership, and as well as several of the other cases cited by Petitioner. In corporate and leisure, there was exactly one month between the time that the receiver was appointed and the time that the bankruptcy was filed. This is significant because the Court in corporate and leisure focused on that timing in looking at the preemption issue. Here, we don't have that. As Justice Tallman pointed out, we have a long time between the time the receiver was appointed in May of 2014 and the time that the bankruptcy was filed in July 2015. In theory, why should that matter? It matters, Your Honor, because of what happened in the interim time period. First and foremost, before the receiver went ahead and properly reconstituted the Board of Directors in this case in December of 2014, he worked very diligently, as we express in our briefs, with Mr. Ren, the former chairman of Sinoclean Energy. He visited him in China. He attempted to negotiate a resolution for the defrauded investors who were owed millions of dollars. He issued press releases. He sent letters. He attempted during that eight-month period to resolve this and to no avail. It's also significant because we know that Mr. Ren and the former Board of Sinoclean Energy for over two years failed to have a shareholder meeting. So the fact that Mr. The former chairman is now coming before this Court and saying, wait a second, I get the opportunity to file a bankruptcy or I get the opportunity to come back in and run this company is absolutely absurd. And it's also significant because during that time period, during that over one-year period between the time the receiver was appointed and the bankruptcy was filed, a very significant event took place. And that was because the receiver could not get the chairman on board and could not reach a resolution with the chairman. He was forced to reconstitute the Board of Directors in December of 2015, a step that he may not have taken had we been able to resolve this in the interim. I think that's a very interesting answer because what you've done really is to distinguish corporate and leisure and not say that it's wrongly decided. And I'm curious about that. Do you think it's correctly decided but distinguishable, or do you think it's wrong, and if so, why? Your Honor, I think it's absolutely wrong, wrongly decided, for the reasons that were set forth by the district court, for the reasons that were set forth in the recent opinion from the Western District of Pennsylvania in Monroe Heights. You know, corporate and leisure was a case where, you know, we had a situation where there was a board that was reconstituted for some of the entities after the bankruptcy was filed. It's a very, very different fact pattern than ours. But I think even more importantly, the cases that were correctly decided, as the Justices point out, the Dury opinion, the LaCouris decision, all of those decisions stand for the idea that once a receiver is appointed, he steps into the shoes of the corporation. He takes over the duties and responsibilities for that corporation, and he's the only person who can decide who can file. Well, doesn't it depend on what powers the appointing authority confers by order on the receiver? Absolutely. Absolutely. That is absolutely true. And I think, you know, important discussion by the petitioner in their opening was that this, you know, this is all dependent on state law. And in this case, the state law that we have is a receivership order that was granted by the state court. And that receivership order, most tellingly, sets forth the fact that the receiver has the power to reconstitute the Board of Directors, and also the power to work alongside that reconstituted Board of Directors to reach a resolution in this case. Additionally, the state court, the state law says that the decision about who can file bankruptcy and the decision about the corporate matters that can take place is governed by the bylaws of the company. And in this case, we have a situation where Sino Clean Energy's former board wasn't even following the existing bylaws that were in place prior to the receiver's appointment. We have a situation here where the bylaws specifically said that there has to be an in-person meeting in order to reach a resolution. The resolution in this case is the rogue resolution that was entered by the former board in February of 2015. We know that there wasn't any in-person meeting. At least that's not what the resolution set forth. But the other way to do it under the bylaws is to not hold a formal meeting, but to have the unanimous or, I'm sorry, the majority consent of the shareholders. In this case, in February of 2015, when the resolution was purportedly entered into by the former board of Sino Clean Energy, the only shareholder, the only director, the only one with any power to do anything in this case was Mr. Grayson. Mr. Grayson was appointed in December of 2014, two months prior to the rogue resolution being entered in this case. So in both the Leisure, the corporate and Leisure case, as well as in the Duryea matter, the issue of who is the proper party is key. So, and if there's some dispute between the some inter-corporate dispute over who has the authority, what have you, is there any exceptions to applying the state law in that context? Well, I think as noted in some of the other opinions, I think the Donaldson decision that was cited by Petitioner, there are exceptions. And the exceptions are when there is fraud. The exceptions are when the receivership is well underway. And notably, those two exceptions occurred and actually support the receiver's position in this case. So there's no contention of fraud here, correct? Not on the receiver's part, no. What we have is the state court order in this case that clearly says that the former board of Sino Clean Energy was engaged in gross mismanagement and a malfeasance. And in fact, the district court even notably stated that the only party that should have any control over this company is the receiver. And that's why it was so important that the receiver, and not the former board, stay in control. And the bankruptcy judge in this case did not, like in the corporate Leisure case, say to the corporation, you could never file for bankruptcy, right? Exactly. And this is not a situation where we have that. We do not have a receivership order that says under no circumstances can Sino Clean Energy ever file bankruptcy. That is not the case here. We have a receivership order that doesn't say who can file bankruptcy. But we do have a receivership order that gives the receiver the power to reconstitute the board. And as we know from state law, the board is the only one who can make the decision on who can file. Is that, in your view, if corporate and Leisure were cabined and limited to a situation in which a state court purported to forbid anyone from filing for bankruptcy, would it be proper in that limited circumstance? You know, Your Honor, I think the problem we have is in that situation, it might be conferred — it might be construed as an ipso facto clause, in other words, a clause against prohibiting a filing of bankruptcy. I mean, I think the case law is pretty clear that you can't prohibit a corporation from filing bankruptcy. So I think in that case we'd have a totally different factual circumstance. So I think had corporate Leisure been different on the facts, I think we might have had a different resolution. And in fact, I think most notably, you know, the Corporate and Leisure Court specifically said that this is a factual determination. I mean, the language that they used in that opinion was it's determined — there's no bright-line rule. It's based on the facts of each case. And it has to be a sensible and fact-based decision. And that's what we have here. We don't have facts like Corporate and Leisure. We have facts where we don't — we had an absent chairman, an absent company, no resolutions passed for over two years, no shareholder meeting. We have a situation where they decided to file bankruptcy on the eve of a contempt proceeding to hold Mr. Wren in contempt. We have investors that are out millions of dollars as a result of the inaction by Mr. Wren and his cronies. So this is a situation that's very, very different from Corporate and Leisure. And I think, as Your Honors pointed out, the Duree case was the one — the case that was correctly decided. First and foremost, I mean, the Duree case is a Ninth Circuit opinion, so it's binding on this Court. The Corporate and Leisure case was a bankruptcy decision out of Arizona. And in the words of the bankruptcy judge, was clearly an outlier. We believe that that is absolutely true. It was an outlier — liar decision. Now, to address the second issue in this case, the first issue, of course, being the authority to file, which, I mean, we contend, as we've argued here today, that the only party who had the power to file the bankruptcy was the receiver or the receiver's appointee, Mr. Grayson. So I think the second issue that's addressed in the briefing that we haven't touched on in any depth at this point is the idea that somehow the courthouse doors were barred to the receiver, and that there's some sort of a preemption argument. First and foremost, I don't think we even get there, because I think, as the district court noted, because the bankruptcy court doesn't have jurisdiction over a bankruptcy that's unauthorized, we can't even get to the preemption argument until we have an authorized bankruptcy. But putting that aside, we have a situation, as I mentioned previously, where there's no race to the courthouse. If this were a situation where the timing was a little bit different, maybe there would be some sort of a preemption argument, but we don't have that here, and so there's no preemption. The petitioners argue in their brief, they talk about the Donaldson-Ford case and say that's analogous to our facts. Actually, that case, there was one day in between the receiver being appointed and the bankruptcy being filed. The cash currency case, there was one week in between. So we don't have a situation like that here. We have over a year in between time where Mr. Wren and his cronies sat on their rights and did absolutely nothing. I think it's also important to note that the important thing is that there's somebody to file bankruptcy, that the — that, as Your Honor pointed out, this is not an ipso facto situation where the courthouse doors are barred and nobody's permitted to file. In fact, in the words of the district court, bankruptcy is just as available now as it ever was. It's just the identity of who may file that has changed. And I think that's extremely telling here. It's the identity of who can file. Mr. Grayson is the one who has the power to file bankruptcy. We haven't stripped Sino Clean Energy of the right to file bankruptcy. We've just changed the identity of who can file. Is this still a going concern? It wasn't clear to me exactly what this was. Well, Your Honor, perhaps my — the petitioner is better — is better able to answer that question. The receiver has done quite a bit of digging and discovery in an attempt to try to figure out what's going on with this company, trying to figure out if it's still operating in China. And to be honest, I don't know that I can stand here before you and tell you one way or the other that it is or isn't. I can tell you that the U.S. entity, which is the parent, the one that we're here before the Court about today, has always been a holding company. The purpose of the company, as I understand it — and the petitioner can correct me if I'm — if I'm wrong — the purpose was always to come over to the U.S., set up a parent company, raise money from U.S. investors, and then the idea was to eventually go public on — on the — on the stock market. As — it didn't happen in this case, because what happened was Sino Clean Energy withdrew from the U.S., refused to turn over books and records, refused to answer the U.S. investors' questions, to the point where they had no choice but to file the action in Nevada. So who's paying the fees of the receiver? Is — are there any assets at all that the receiver has been able to obtain? Well, Your Honor, I know that my petitioner in their briefing alleged that this was all a ruse by the receiver to try to get its fees — to rack up its fees. I mean, I'm a little hesitant to give you a whole lot of detail, but I can tell you, because you asked the direct question, that at this point in time, the receiver is not getting paid. You know, we have a few other cases like this, where sometimes the investors will — will come in and they'll pay fees and costs. They'll — we'll ask them, you know, look, if you want us to continue. And we have a situation, too, where, you know, sometimes we file various lawsuits against accounting firms, against law firms. Insurance policy. Exactly. Do you know — Do you know if we can find the information? So in those cases, hopefully, we — we are able to — to get some money to pay the receiver. But, you know, in this case, I think the receiver's goal has been more of a — you know, we have a situation where we've got a U.S. court order. How do we enforce it in China? How do we get the chairman over here to the U.S.? And it's one of the reasons, as we pointed out in our briefing, why we were able to get — why it was so important that we got the contempt order, which our motion was filed, you know, about a month before they went in and filed the bankruptcy. And what we've been able to do since then is we've been able to get a bench warrant, which is part of this record. And we were able to lodge the bench warrant with Interpol so that if Mr. Ren is — does enter into an Interpol-related country, hopefully we can enforce the bench warrant, which I believe the fine was several hundred dollars per day for every day he doesn't comply. So I see my time is — is almost expired. You know, I think, Justice Talmadge, you hit the nail on the head when you said, essentially, he's using the court system as both a shield and a sword. He can't benefit from the U.S. bankruptcy — bankruptcy system the way that he's attempting to do, the way that Mr. Ren and Sino Clean Energy are attempting to do. I think if you look at the facts and the law, there is clearly no — no error on the court below, and we ask that this court affirm the district court's opinion. Thank you, counsel. Thank you. Mr. DeSouza, you have some rebuttal time. Thank you, Your Honors. First of all, I'm not sure it's terribly central to the decision, but counsel's suggestions that there's some nefarious intent to thwart the state court, a characterization is just wrong. The appellants are arguing that the case should belong in bankruptcy, and Judge Beasley, as the Bankruptcy Court judge, will undoubtedly exercise broad discretion to decide what he believes is appropriate. Well, that's on the assumption that he has jurisdiction by a properly filed petitioner who has the authority to put the company into bankruptcy. Of course, Your Honor, and I'm sorry, I meant in the event that Your Honors reverse and remand. To be clear, and I will tell you for my best guess as to what would happen in that scenario, is the bankruptcy judge would say, a pox on both your houses, Mr. Ren, I'm not going to let you remain as a fiduciary debtor in possession, receiver, you're owed a million dollars, you're the largest creditor of the case, you're not going to run this bankruptcy case, I'm going to put in a third party trustee. And that is all we are arguing for. What's that going to get us? If this is essentially an empty shell, I'm not sure what the point of this whole exercise is other than Mr. Ren doesn't want to come anywhere near Nevada. Well, Your Honor, actually, that's, I believe, respectfully a mischaracterization. A bench warrant outstanding for his arrest. No, Your Honor, I'm sorry, let me be clear. In order to file a bankruptcy case, an artificial entity must, under the bankruptcy rules, designate what's called a responsible person. That responsible person is the person who is the responsible person for the company on the line to face contempt and other sanctions in the event that responsible person is led astray. It's not responsible. Yeah, it's not responsible. Literally, that's the language in the bankruptcy rules. So, Your Honor, Mr. Ren was voluntarily subjecting himself to the bankruptcy court and wanted that bankruptcy case to proceed, even in the event that he may be removed by the bankruptcy court and a third-party trustee put in place. But he was the CEO, was he not, before he was released? He was a chairman of the board of directors and he was also the CEO, yes. Before the board was changed, and I assume he was fired at some point if he hadn't voluntarily resigned. Right, correct, Your Honor. And I see I have ten seconds, unless you have any other questions. You may use a sentence or two to sum up, if you'd like. Thank you, Your Honor. Your Honors, in closing this appeal, as a bankruptcy practitioner for some 20-odd years, I think this appeal presents a very interesting issue regarding the legal availability of access to the bankruptcy courts for a corporate Chapter 11 debtor acting through its management and how that access cannot, as a matter of federal law, ultimately be barred and indeed even by a state court acting pursuant to state receivership law, including a receivership order, and any actions taken pursuant to that order, including the removal of, by the receiver of the existing board. Your Honors, thank you very much. Thank you, Counsel. We appreciate the arguments of both of you. They've been very helpful in this interesting case. The case argued is submitted. And we'll stand adjourned and we'll be back after our conference.
judges: Graber, Tallman, Lemelle